423 S.E.2d 606

**Edward A. LENOX and Debra L. Lenox, Plaintiffs below, Appellants,**

v.

**Robert Edwin McCAULEY and Pepsi Cola Metro Bottling Co., Inc. Defendants below, Appellees.**

No. 20487.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1992.

Decided Oct. 22, 1992.

Robert W. Friend, Parkersburg, for appellants.

John D. Hoffman, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for appellees.

PER CURIAM:

Edward A. Lenox and Debra L. Lenox appeal from an award by a jury in the Circuit Court of Wood County for personal injury damages. Mr. and Mrs. Lenox allege that: (1) the trial court erroneously instructed the jury on the defendants' theory of the case and erroneously excluded other instructions; (2) the trial court erroneously instructed the jury on the issue of future damages; (3) the $3,837.40 award was inadequate; and, (4) the failure to award Mrs. Lenox damages for the loss of consortium requires reversal. We find no error and affirm the jury verdict.

On May 7, 1986 an accident occurred north of Parkersburg on Route 2 near Five Mile Run Road when the 1978 Toyota operated by Mr. Lenox was struck in the rear by a Pepsi Cola Metro Bottling Co. truck operated by Robert McCauley. Shortly before his car was struck, Mr. Lenox began slowing down to make a right turn. After the accident Mr. Lenox was treated at the Camden Clark Hospital Emergency room for an abrasion of the left elbow and "probable" muscle strain of the cervical, dorsal and lumbar spine. Mr. Lenox was advised not to work for two days.

There are several factual disputes concerning the accident and its effect on Mr. Lenox. The parties disagree about both the circumstances and severity of the accident. Mr. Lenox maintains that the accident occurred after he slowed down and signaled a right turn, which he was about to make. Mr. McCauley said that he never saw a turn signal or brake lights. A witness who was going the opposite way on Route 2 said he saw the turn signal on the car's front; however, this witness admitted that he did not wait at the scene to give the police a statement because he had been drinking beer. The passenger in Mr. Lenox's car said that he saw the dashboard's turn signal indicator light blinking. The State Trooper who investigated the accident testified that when he tested the

brake lights on Mr. Lenox's car after the accident, they did not work even though the tail light lenses were not damaged by the accident. Mrs. Lenox testified that the car's brake lights were working on the day after the accident.

There is also conflicting testimony concerning the severity of the accident. Mr. Lenox maintains that as a result of the collision his car became airborne for 30 to 40 feet and finally stopped some 140 yards later. Two witnesses for Mr. Lenox testified that the impact propelled Mr. Lenox's car a considerable distance. Mr. McCauley said that after the collision his truck moved about 3 feet and that Mr. Lenox drove his car about 45 feet to pull off the road. There was minimal damage to both vehicles. Mr. Lenox's car had a crease in its rear quarter panel and its bumper was detached on the left, but the lens for its tail lights were not broken. The Pepsi truck's bumper was compressed.

Mr. Lenox alleges that as a result of the accident he had substantial medical problems with his back, legs and hearing and he submitted medical bills totaling $20,197.66. One of his expert witnesses was Ermel R. Harris, Jr. a chiropractor, whose extensive treatment of Mr. Lenox began 2 years and 2 months after the accident. Dr. Harris said that the accident resulted in cervical sprain, cervicalgia (neck pain); lumbar sprain; lumbalgia (low back pain), thoracic sprain and pain in the thoracic spine. However, according to Dr. Harris, the only objective evidence of injury was an x-ray finding of a hypolordotic or straight cervical spine. Dr. Harris acknowledged that his opinion was based on Mr. Lenox's complaints of pain and the reports of the chiropractor who treated Mr. Lenox immediately after the accident. On cross-examination Dr. Harris admitted that because of Mr. Lenox's leg length discrepancy, the result of an earlier motorcycle accident, many of Mr. Lenox's misalignments were expected and that Mr. Lenox's degenerative disc disease could also have resulted from his tilted hip and shortened leg. In addition, Mr. Lenox's condition appears to have improved until he had another car accident on Sep-

tember 26, 1986, which at the time of this trial remained in litigation.

John W. Ray, M.D., an otolaryngologist, who examined Mr. Lenox almost 4 years after the accident, said that as a result of the accident, Mr. Lenox had some hearing loss in his right ear. Dr. Ray noted that Mr. Lenox said the hearing loss occurred about 4 months after the accident, which is an unusual delay. Dr. Ray also said that Mr. Lenox's first experience with tinnitus occurred about one month after the accident. But medical records introduced by Mr. McCauley show that in 1981 Mr. Lenox complained about tinnitus.

The defense challenged the severity of Mr. Lenox's injuries by presenting Wayne Cayton, M.D., the physician who treated Mr. Lenox in the emergency room immediately after the accident. Dr. Cayton said that Mr. Lenox had an abrasion on his elbow and a "probable" strain based on Mr. Lenox's complaints of pain. However, Dr. Cayton found no evidence of a permanent injury. Gary Miller, M.D., an orthopedic surgeon, who examined Mr. Lenox in April 1987 after Mr. Lenox's leg went numb causing him to fall and hit his back, found no objective reason for Mr. Lenox's complaints of numbness. Dr. Miller did find that Mr. Lenox had a facet disease (arthritis) of the lumbar spine, which Dr. Miller felt was the result of Mr. Lenox's long-standing leg length discrepancy.

The defense also presented evidence from Thomas Durick, M.D. from the Pain Clinic at W.V.U. School of Medicine and Richard Gross, Ph.D., a clinical psychologist. Dr. Durick found no physical reason for Mr. Lenox's complaints of pain. Dr. Gross thought that Mr. Lenox had a somatoform pain disorder that pre-existed the May 19, 1986 accident. The State Trooper who investigated the accident said that Mr. Lenox was wearing a cervical collar in January 1986, about 5 months before the accident.

Mr. Lenox testified that he and Mrs. Lenox separated in December 1986 and their divorce was final on October 1, 1987. Mr. Lenox said that although they had problems throughout their marriage, the

accident worsened the problems. According to Mr. Lenox the second accident made the problems "a little worse ... [b]ut that first accident's what really got the ball rolling." Mrs. Lenox testified that before the second accident, Mr. Lenox's problems had improved except for complaints of pain. Mrs. Lenox blamed both accidents for the breakup of their marriage. The record also shows that Mr. Lenox was incarcerated from March 2, 1987 until August 31, 1987 in the Wood County Jail on an unrelated matter.

Mr. Lenox submitted documentation of medical expenses in the amount of $20,-197.66. However, the defense argued that only the medical expenses incurred immediately after the accident, about $856.85, were reasonable and necessary. The jury found that Mr. Lenox was thirty-five percent (35%) negligent and Mr. McCauley was sixty-five percent (65%) negligent, awarded Mr. Lenox $3,837.40 damages ($2,537.40 for medical expenses) and awarded Mrs. Lenox no damages.

### I

■ Mr. Lenox contends that the trial court erred by allowing the jury to be instructed on the defendants' theory of the case.[1] " ' "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 1, *Ratlief v. Yokum* [167 W.Va. 779], 280 S.E.2d 584 (W.Va.1981), *quoting*, syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).' Syllabus Point 6, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983). Syl. Pt. 17,

*Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990)." Syllabus Point 1, *Waugh v. Traxler*, 186 W.Va. 355, 412 S.E.2d 756 (1991). Given the conflicting evidence on the cause of this accident, we find that the factual questions were properly submitted to the jury, who determined that both parties were negligent, Mr. Lenox, thirty-five percent (35%) and Mr. McCauley, sixty-five percent (65%). Therefore, we reject Mr. Lenox's contention that no factual basis exists for finding him negligent.

■ Next, Mr. Lenox argues that some of the defense instructions were incomplete because they failed to require that the jury find the statutory violation be the proximate cause of the accident. " 'Violation of a statute is *prima facie* evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury.' Syl. Pt. 1, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990)." Syllabus Point 2, *Waugh v. Traxler, supra.*[2]

■ In Syllabus Point 2, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986), this Court stated:

Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, through [sic] one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone.

Although some of the defense instructions were incomplete by omitting the proximate cause element, proximate cause was defined in Plaintiffs' Instruction No. 5 and Defendants' Instruction No. 14. "Obviously, legal terms need not be redefined at each point used in an instruction." *McAl-*

---

**1.** Mr. Lenox objected to Defendants' Instruction Nos. 19, 20, 23 and 25 and maintains that the trial court erred in failing to give Plaintiffs' Instruction Nos. 11 and 12.

**2.** Mr. Lenox also assigns error to Defendants' Instruction No. 25 alleging that the jury was instructed that Mr. Lenox was absolutely required by statute to have functional brake lights. Defendants' Instruction No. 23 said:

The Court instructs the jury that the violation of a provision of the West Virginia motor vehicle statute is evidence of negligence. [Citations omitted].

Given that the words *"prima facie"* were removed from Defendants' Instruction No. 23 at Mr. Lenox's request, we find that the error now alleged by Mr. Lenox was invited. Mr. Lenox also objected to the amended instruction.

*lister v. Weirton Hospital, Co.,* 173 W.Va. 75, 79, 312 S.E.2d 738, 742–43 (1983). In addition, the Special Questions for the jury required the negligence to have "proximately caused or contributed to the accident...." When the instructions are read as a whole, we find that the jury was accurately advised on the law.[3]

## II

■ Mr. Lenox also alleges that he should have recovered for future effects of his injury even though the injury was not permanent. Specifically Mr. Lenox argues that Defendants' Instruction No. 5 required the jury to find a permanent injury in order to award damages for future effects.[4] We described future damages in Syllabus Point 2, *Flannery v. United States,* 171 W.Va. 27, 297 S.E.2d 433 (1982):

> "Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses. Syllabus Point 10, *Jordan v. Bero,* [158] W.Va. [28], 210 S.E.2d 618 (1974)."

The trial court also gave Plaintiffs' Instruction No. 16, which instructed the jury to award damages to compensate Mr. Lenox for future medical expenses, future pain, suffering and mental anguish, future loss of ability to enjoy life, and future lost earnings; provided, however, that the future consequences were the result of the accident. In addition, Defendants' Instruction No. 6 addressed future medical expenses, and Defendants' Instruction Nos. 7,

8, 9 and 10 addressed loss of future earnings or impairment of earning capacity.

■ Our general rule on the recovery of future damages is contained in Syllabus Point 1, *Flannery v. United States, supra:*

> "The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." Syllabus Point 9, *Jordan v. Bero,* [158] W.Va. [28], 210 S.E.2d 618 (1974).

During the trial, Mr. Lenox maintained that he suffered permanent injuries and supported his claim with testimony from Dr. Harris and Dr. Ray. Mr. Lenox did not argue that he had suffered a non-permanent injury that would have future consequences. The defense maintained, principally through the testimony of Drs. Cayton, Durick and Gross that as a result of the accident Mr. Lenox had not suffered a permanent injury or an injury that would have future consequences.

■ Given the evidence presented at trial, we find Mr. Lenox's assignment of error concerning Defendants' Instruction No. 5 to be without merit. We also find that when the instructions are read as a whole they were adequate. *See infra* Section III. Finally, the jury apparently resolved the conflicting evidence of the extent and duration of Mr. Lenox's injuries *primarily* in the defendants' favor and we have long held that the resolution of "issues of fact [are] for jury determination when the evidence pertaining to such issues is conflicting...." Syllabus Point 1, in part, *Waugh v. Traxler supra.*

## III

■ Mr. Lenox argues that the damage award is inadequate. Although Mr.

---

**3.** Mr. Lenox also alleges that because Mr. McCauley had the last clear chance to avoid the accident, the jury should have disregarded Mr. Lenox's alleged negligence. *See Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981) ("The doctrine of last clear chance is not available to the defendant" (Syllabus Point 4) and because the historical reason for the last clear chance doctrine no longer exists, we "abolish the use of the doctrine of last clear chance for the plaintiff" (Syllabus Point 5)).

**4.** Defendants' Instruction No. 5 states:

> You are further instructed that Edward Lenox may not recover any damages for the future effects of his injury unless he proves with reasonable certainty that the injuries he claims are permanent.
>
> If after considering the evidence you find that he has failed to prove by a preponderance of the evidence that the injuries he claims are permanent in nature, you may not award him damages for the future effects of the alleged injuries, if any. (Citation omitted).

Lenox submitted evidence that his medical expenses were $20,197.66, the jury awarded only $3,837.40 in damages of which $2,537.40 were for medical expenses and loss of wages. In Syllabus Point 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), we said:

> In an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant.

"Courts are reluctant to set aside a jury's award of damages unless it is clearly shown that the award was inadequate." *Delong v. Kermit Lumber & Pressure Treating Co.*, 175 W.Va. 243, 246, 332 S.E.2d 256, 259 (1985). *See also Delong v. Albert*, 157 W.Va. 874, 205 S.E.2d 683 (1974).

▇▇▇ Viewed most strongly in favor of the defendants, the evidence shows that Mr. Lenox sustained a minor non-permanent injury.[5] Mr. Lenox's condition improved until he was involved in a subsequent accident. In addition many of Mr. Lenox's physical and emotional problems existed before this accident and the accident does not appear to have exacerbated the pre-existing problems. Given the conflicting evidence, we find that the jury's award of damages is not inadequate when the evidence is viewed most strongly in favor of the defendant.[6]

### IV

▇▇▇ Lastly, Mr. Lenox contends that the failure to award damages for loss of consortium requires reversal. *Talkington v. Barnhart*, 164 W.Va. 488, 264 S.E.2d 450 (1980); *Ellard v. Harvey*, 159 W.Va. 871, 231 S.E.2d 339 (1976); *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976). In this case, the jury was instructed on the loss of consortium and evidently found the

---

**5.** Mr. Lenox, in a separate assignment of error, requests that a new trial be ordered on the sole issue of damages. Because we do not find the jury's award of damages to be inadequate, we refused to require a new trial.

**6.** Mr. Lenox also contends that the circuit court should have bifurcated the trial because of prejudice caused by knowledge of Mr. Lenox's conviction and incarceration. The right to order separate trials is within the sound discretion of the trial court. *Bowman v. Barnes*, 168 W.Va. 111, 117, 282 S.E.2d 613, 617 (1981). Given that Mr. Lenox's credibility was an issue in the liabil-

---

evidence on loss of consortium insubstantial. Mrs. Lenox testified that after the accident Mr. Lenox became mean and slept on the floor or on a reclining chair. Mrs. Lenox also said that after the subsequent accident Mr. Lenox's problems became worse. The jury also knew that Mr. and Mrs. Lenox were separated for a half year while Mr. Lenox was incarcerated.

Because the evidence shows several other factors that could have affected the relationship between Mr. and Mrs. Lenox, we find that the jury's refusal to award damages for loss of consortium should be affirmed.[7]

For the above stated reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

---

ity portion of the trial as well as the damage portion, we find the trial court did not abuse his discretion in refusing to bifurcate the trial.

**7.** The plaintiffs' brief lists a number of other assignments of error, but there is no specific discussion of these errors in the brief. Consequently, we apply our customary rule stated in Syllabus Point 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981):

> Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.