· 490 S.E.2d 61

**Eloise PAULEY, Plaintiff
Below, Appellee,**

v.

**Lansford BAYS, Defendant
Below, Appellant.**

No. 23558.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 5, 1997.

Decided July 7, 1997.

Tony L. O'Dell, Berthold & Tiano, Charleston, for Appellee.

David A. Mohler, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for Appellant.

PER CURIAM:

This is an appeal by Lansford Bays (hereinafter "Appellant") from a December 14, 1995, order of the Circuit Court of Lincoln County granting a new trial on the issue of damages to the Appellee Eloise Pauley (hereinafter "Appellee"). The Appellant, the defendant in an underlying civil action for damages sustained during an automobile accident, contends that the lower court abused its discretion in ordering the new trial on the issue of damages. We agree and remand this matter for resolution consistent with the original jury award.

## I.

On July 2, 1990, as the Appellant exited his residential driveway and maneuvered his vehicle onto MacCorkle Road in Lincoln County, the sharp curve at the end of his driveway required him to pull across the road, back his vehicle into the road, and then proceed forward into his own lane of travel. According to the Appellee's testimony, she approached the Appellant in her own vehicle and observed the Appellant's attempts to access the main road. She testified that she had observed the Appellant from approximately 150 feet away and had reduced her speed to approximately ten miles per hour prior to impact. The Appellant's vehicle then collided with her vehicle as the Appellant began to move forward into the roadway. The Appellee exited her vehicle and informed the Appellant that the damage could be "pounded out" without any problem. She then traveled toward a flea market but turned around to go home when she discovered a rattle in her truck. Although the Appellant passed away prior to trial,[1] his deposition indicated that the collision occurred as he began making his forward turn. He testified that although he observed the Appellee in time to hit his brake, he "bumped her slightly." The accident caused approximately $1590 damage to Ms. Pauley's truck.

On October 14, 1992, the Appellee filed a civil action, claiming that the accident caused her teeth to be knocked loose and caused chronic jaw, neck, shoulder, and back pain. In July 1994, the Appellee added a claim of depression allegedly resulting from the accident. The matter was tried in the lower court in August 1994, and the Appellant's primary evidence regarding damages emphasized the Appellee's pre-accident ailments and treatment. In presenting evidence indicating that the Appellee had suffered several physical problems prior to the accident, the Appellant introduced evidence of treatment by Dr. Loren Smith for neck and back problems since 1979. Dr. Smith testified that he had treated her for these problems prior to the accident at issue in this case. She had also complained of back pain on September 5, 1989, when she turned on a pressured water hose in a car wash stall. The Appellant's evidence also indicated that the Appellee had complained of jaw pain in 1989, and Dr. Joseph Fernandes, an orthopedic surgeon, had treated the Appellee for degenerative disc disease on May 18, 1990, less than two months prior to the accident.

Dr. John Schmidt, a neurosurgeon, testified that the Appellee's head, neck, and spine were unremarkable, and he indicated that she would not benefit from additional treatment. Dr. Schmidt also explained that he had been "unable to demonstrate evidence of neurologic disease." The Appellant also emphasized during trial that the Appellee had six teeth extracted and her dentures realigned within six months prior to the accident and that the Appellee had received no treatment from the summer of 1991 until the summer of 1992.

Dr. Daniel Black, an osteopath, testified for the Appellee and indicated that she suffered post traumatic fibromyalgia. He estimated her future expenses for anti-depressants of $2250 per year for her life expectancy of 11.5 years, for a total of $26,000. Dr. Black's report subsequent to

---

1. The Appellant died of a heart attack on April 11, 1994, and his widow was substituted as the defendant in this case.

examination indicated that the Appellee required no more treatment at that time. Although Dr. Black initially stated that the Appellee would require follow-up visits, the cost of which contributed to his estimate of $2250 per year in medical futures, he had not seen the Appellee from June 1992 to the trial in August 1994. Dr. Thomas F. Scott, an orthopedist, testified that she had no need for future medication or treatment of any nature. He also stated that he found no abnormalities in her head, neck, shoulders, spine, or extremities. He found normal mobility in the neck, spine, and hips. Dr. Steven Dreyer, a neuropsychologist, testified that the Appellee suffered depression due to the accident and would require $1000 to $4000 for future treatment of that depression.

The jury determined that the Appellant was 60% negligent and that the Appellee was 40% negligent. It awarded $15,000 for medical expenses[2], $2,000 for future medical expenses, $2,000 for pain and suffering, and $1,000 for loss of enjoyment of life. According to the allocation of negligence, that $20,000 verdict was then reduced by the Appellee's 40% negligence to $12,000. The Appellee thereafter moved for a new trial, claiming that the jury did not adequately compensate her for future medicals.

On December 14, 1995, the lower court granted a new trial on the issue of damages.[3] The lower court observed that the Appellant neither refuted the testimony of Dr. Black or Dr. Dreyer regarding future medicals nor directly disputed the Appellee's assertion that she suffered fibromyalgia. The lower court further stated that the jury improperly granted only $2000 in future medicals and did not grant the Appellee a sufficient amount for pain and suffering. The Appellant appeals, contending that the lower court erred in ruling that the $2000 for future medicals was insufficient and erred in ruling that the Appellee's evidence of futures was uncontroverted. In support of his argument, the Appellant directs attention to his evidence regarding the absence of abnormalities in the medical examinations and the similar ailments she suffered prior to the accident. The Appellant also references the testimony of Dr. Scott and Dr. Schmidt regarding the absence of need for further treatment.

## II.

### STANDARD OF REVIEW

In *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), cert. denied, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), we addressed the standard of review applicable to a motion for a new trial and held as follows in syllabus point three:

A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

We also noted in *Asbestos Litigation* that "the role of the appellate court in reviewing a trial judge's determination that a new trial should be granted is very limited." 193 W.Va. at 126, 454 S.E.2d at 420. "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." *Id.*

In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), this Court stated that "[a]s a general proposition, we review a circuit court's rul-

---

2. The Appellee had submitted medical bills of approximately $13,772.

3. Rule 59(a) of the West Virginia Rules of Civil Procedure provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]"

ings on a motion for a new trial under an abuse of discretion standard." *Id.* at 104, 459 S.E.2d at 381. *See also Coleman v. Sopher,* 194 W.Va. 90, 96, 459 S.E.2d 367, 373 (1995). In discussing the *Asbestos Litigation* ruling and its impact upon this Court's review, we observed in *Tennant* that "when a trial court abuses its discretion and grants a new trial on an erroneous view of the law, a clearly erroneous assessment of the evidence, or on error that had no appreciable effect on the outcome, it is this Court's duty to reverse." *Id.* at 106, 459 S.E.2d at 383. In *Tennant* for instance, we found no reversible error in a challenged jury charge, and we consequently found that the successor judge abused his discretion by granting a new trial based upon alleged defects in that instruction. *Id.* at 117, 459 S.E.2d at 394.

▮ Similarly, in *Maynard v. Adkins,* 193 W.Va. 456, 457 S.E.2d 133 (1995), we reiterated the principles of *Asbestos Litigation* regarding a limited appellate review of a lower court's decision to grant a new trial, yet we recognized that "consistent with *Asbestos Litigation,* on the other hand, is the general principle that the judgment of a trial court in awarding a new trial should be reversed if it is 'clearly wrong' or if a consideration of the evidence shows that the case was a proper one for jury determination." 193 W.Va. at 459, 457 S.E.2d at 136, quoting *Sargent v. Malcomb,* 150 W.Va. 393, 395, 146 S.E.2d 561, 563 (1966). As we explained in syllabus point four of *Bronson v. Riffe,* 148 W.Va. 362, 135 S.E.2d 244 (1964), "[w]here the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon."

▮ In syllabus point seven of *Earl T. Browder Inc. v. Webster County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960), we held as follows: "The action of the trial court in setting aside a verdict for the plaintiff and awarding the defendant a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the defendant was committed therein." Thus, while the lower courts are afforded broad discretion regarding the granting of a new trial, that discretion is not unfettered and is circumscribed by the law of the underlying substantive issue. In other words, while the lower court in *Tennant* had substantial discretion with regard to awarding a new trial, it could not base its discretionary determination upon an improper legal conclusions regarding underlying issues. Likewise, in *Maynard,* while we extended broad discretion to the lower court regarding the new trial determination, we scrutinized the underlying substantive claim regarding an alleged conflict of interest of a party's attorney. 193 W. Va. at 459–61, 457 S.E.2d at 136–38. Consequently, in the present case, we must analyze the issue upon which the lower court based its determination to grant a new trial.

### III.

### ADEQUACY OF THE VERDICT

In the present case, the lower court's decision to grant a new trial was based upon evidence regarding the Appellee's fibromyalgia and the alleged absence of any testimony directly disputing the fact that she suffers from that ailment. The lower court also stated that the Appellee's evidence of depression resulting from the accident was likewise not controverted. Thus, the lower court concluded that the jury's award did not adequately compensate the Appellee for her injuries.

▮ In syllabus point two of *Maynard v. Napier,* 180 W.Va. 591, 378 S.E.2d 456 (1989), we explained:

> " 'Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves,* 151 W.Va. 449, 153 S.E.2d 165 (1967).' *King v. Bittinger,* 160 W.Va. 129, 231 S.E.2d 239, 243 (1976)." Syllabus Point 1, *Kaiser v. Hensley,* 173 W.Va. 548, 318 S.E.2d 598 (1983).

In syllabus point three of *Biddle v. Haddix,* 154 W.Va. 748, 179 S.E.2d 215 (1971), we explained as follows:

> In a civil action for recovery of damages for personal injuries in which the jury

returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

■ However, we have also consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability. As an element of that vital task, the jury must analyze the evidence and determine the credibility to be assigned to various components of that evidence. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." *Id.* at 255, 106 S.Ct. at 2513. *See McKenzie v. Cherry River Coal & Coke Co.*, 195 W.Va. 742, 466 S.E.2d 810 (1995). In syllabus point three of *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963), we held as follows:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

In *Lenox v. McCauley*, 188 W.Va. 203, 423 S.E.2d 606 (1992), we reiterated that where a damage issue has been tried by a jury, the allegation of inadequate damages should be weighed on appeal by viewing the evidence most strongly in favor of the defendant. *Id.* at 209, 423 S.E.2d at 612. We also indicated that a jury's award should not ordinarily be set aside unless the award is clearly inadequate. *Id.*

■ In syllabus point three of *Asbestos Litigation*, we authorized the trial court to "weigh the evidence and consider the credibility of witnesses[,]" in the context of grant-

ing a new trial; however, that does not obviate the essential role of the jury in resolving conflicting evidence and credibility issues. As outlined above, the jury in the present case was presented with conflicting evidence upon which it founded its conclusions. The Appellant premised his theory of the case upon the Appellee's history of ailments, originating prior to the accident in question. This defense was obviously designed to convince the jury that the Appellee was attempting to blame these ailments upon the accident rather than acknowledging the fact that they preexisted the accident. Further, the tenor of the Appellant's presentation to the jury emphasized the fact that although the Appellee's evidence suggested depression and fibromyalgia, physicians presented by the Appellant indicated that their testing showed no abnormalities in the Appellee. Even Dr. Black's diagnosis of fibromyalgia was placed in controversy by the recognition of the fact that Dr. Black initially indicated that the Appellee required no further treatment and the absence of treatment for this ailment for approximately two years. The Appellant essentially challenged the jury to ponder the efficacy of granting a future medical award for annual treatment when the Appellee had not received this alleged required treatment in the two years prior to trial.

This is not a situation such as that contemplated in syllabus point three of *Asbestos Litigation*, wherein the jury "verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice...." 193 W.Va. at 121, 454 S.E.2d at 415. This is simply a matter of conflicting evidence regarding the degree of physical injury suffered by the plaintiff. The jury was presented with adequate evidence from the opposing sides, and it arrived at a conclusion.

We find that the underlying civil action was fairly tried before a competent jury in the lower court. Reviewing the evidence before this Court and fully cognizant of the broad discretion afforded to the lower court in matters of this nature, we do not find

justification for the lower court's determination to abandon the conclusions of the jury. Specifically, we find that the lower court abused its discretion in vacating this verdict, we reverse the lower court's order granting a new trial on the issue of damages, and we remand this matter for reinstatement of the verdict of the jury and for further proceedings consistent with this opinion.

Reversed and remanded.