530 S.E.2d 173

**Harold James MARSCH, Tammie Marsch, Joshua Marsch and Dena Marsch, Plaintiffs Below, Appellants,**

v.

**AMERICAN ELECTRIC POWER COMPANY, Columbus Southern Power Company and Ohio Power Company, Defendants Below, Appellees.**

No. 25863.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 6, 1999.

Decided Nov. 17, 1999.

Dissenting Opinion of Chief Justice
Starcher Jan. 10, 2000.

Avrum Levicoff, Esquire, Edward A. Smallwood, Esquire, Brown & Levicoff, Pittsburgh, Pennsylvania, Attorneys for Appellants.

Paul T. Tucker, Esquire, Rhonda L. Wade, Esquire, Bachmann, Hess, Bachmann & Garden, Wheeling, West Virginia, Attorneys for the Appellees.

## PER CURIAM:

This is an appeal by Harold James Marsch, his wife Tammie Marsch, and their children (hereinafter "Appellants") from an order of the Circuit Court of Marshall County denying the Appellants' motion for a new trial based upon the inadequacy of the jury verdict in their favor. The Appellants contend that the lower court erred in failing to grant a new trial, based upon the inadequacy of the damages awarded by the jury. We find that the lower court did not abuse its discretion in denying the motion for new trial, and we affirm.

## I.

## FACTS

On July 27, 1995, Mr. Harold James Marsch (hereinafter "Mr. Marsch" or "Appellant") fell through an unguarded opening in a floor at the Kammer Power Plant, owned by Appellee Ohio Power Company (hereinafter "Ohio Power" or "Appellee").[1] Mr. Marsch was employed by George V. Hamilton, Inc., an insulation contractor located near Pittsburgh, Pennsylvania, and the George V. Hamilton company had contracted with Ohio Power to perform insulation work at the Kammer Power Plant in Marshall County, West Virginia. During the fall, Mr. Marsch allegedly sustained injuries to his right shoulder, left knee, and lower back, was transported to the emergency room, and was thereafter sent home. He continued to work after his fall, assigned to light duty in the tool shed. Dr. Scott Baron, an orthopedic surgeon who had previously performed surgery[2] on the Appellant's right shoulder in 1986, diagnosed the Appellant with "acute

1. The unguarded opening in the floor had been created by the removal of a machine, namely the exciter portion of a turbine, from the floor. The removal of the machine had produced a three foot by three foot square opening in the floor which revealed a shaft extending downward. Ohio Power Company employees had covered the opening with an unmarked sheet of plywood. the testimony at trial suggested that Ohio Power employees had initially placed caution tape around the unguarded opening due to the obvious danger, but the tape had been removed prior to Mr. Marsch's accident. Ohio Power asserted at trial that Mr. Marsch had worked in power plants for 13 years during "outages" designed to allow repair and was well aware that equipment was removed during those outages leaving holes in floors and other dangerous circumstances.

2. Mr. Marsch had suffered recurrent right shoulder dislocations and had undergone anterior shoulder reconstructive surgery in 1986. A pin was placed in his shoulder during this 1986 surgery, and both Mr. Marsch and Dr. Baron testified that the prior shoulder surgery had left Mr. Marsch with residual limitations in the shoulder, as well as degenerative changes to the shoulder.

right shoulder strain" after an August 1, 1995, examination. X-rays indicated the presence of degenerative changes to the shoulder, and physical therapy was prescribed but never attended by the Appellant.

In September 1995, approximately six weeks after the industrial accident, Mr. Marsch performed work on overhead water pipes in the basement of his home in Pennsylvania. During this work, he felt a severe pain in his right shoulder.[3] Dr. Baron diagnosed the Appellant with a full tear of his right rotator cuff, requiring surgical repair. The Appellant missed approximately six months of work after the surgery, undergoing physical therapy on his shoulder. At trial, Dr. Baron opined that the Appellant sustained at least a partial tear of the rotator cuff during the July 1995 fall. Ohio Power Company's expert testified that the Appellant may have suffered only a partial tear in the fall and a more extensive tear as a result of the incident occurring while working on pipes at home in September 1995.

The Appellant returned to work in March 1996 and worked in the less demanding commercial insulation work, rather than the more difficult industrial insulation work he had previously performed. Approximately fifteen months after the industrial accident, the Appellant complained of pain and swelling in his left knee. Dr. Baron opined at trial that the July 1995 accident had injured or re-aggravated a torn ligament that the Appellant had sustained twenty years earlier and that the knee condition would eventually require total knee replacement.[4]

Ohio Power admitted liability for the accident; thus, the following issues were submitted to the jury during a June 1998 trial: (1) Mr. Marsch's comparative negligence; (2) compensatory damages; (3) loss of consortium on the part of Mr. Marsch's wife and children; and (4) punitive damages. The jury concluded that Ohio Power was ninety percent negligent and the Appellant was ten percent negligent. The jury awarded damages as follows: past medical expenses of $12,806.42, future medical expenses of $55,000, past lost earnings of $10,000, impairment of future earnings capacity of $45,000, and punitive damages of $15,000.[5]

On August 14, 1998, the lower court entered judgment on the jury's verdict, and on September 12, 1998, the lower court entered an order denying the Appellants' motion for a new trial. The Appellants have appealed that jury verdict to this Court, emphasizing the jury's failure to award damages for past, present, or future pain and suffering, the loss of enjoyment of life, the loss of ability to perform household services, and loss of consortium for Mr. Marsch's wife and children.[6]

3. Mr. Marsch testified: "I was rerouting some piping up in the ceiling and putting new water lines in and moving gas lines around, soldering and stuff like that. I was yanking on a pipe over my head, trying to position it through a hook that I had ready for it, and I just felt an onset of pain in my shoulder and it worried me."

4. Dr. Baron testified that the injury twenty years earlier had caused arthritic changes to the knee, but that the knee had been asymptomatic for over twenty years prior to the July 27, 1995, accident.

5. The jury initially awarded no punitive damages, but the lower court sent the jury to re-deliberate and an award of $15,000 punitive damages was ultimately made by the jury.

6. Ohio Power has also forwarded the argument that the Appellants waived their right to claim inadequacy of the damages since they did not object to the verdict form at trial, which read as follows: "[s]tate the amount of damages, if any, that Harold Marsch is entitled to recover for the

following items." Ohio Power maintains that the phrase "if any" welcomed the jury to award nothing for some elements. Ohio Power further contends that since the Appellants did not object to that language, they are now barred from claiming inadequacy. We explained in syllabus point two of *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999), that "[a]bsent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form." The defect in *Combs* was the jury's failure to place any dollar amount on the verdict form for general damages. In the present case, a zero was placed on the appropriate lines for the jury's determination of damages, and the Appellants are not raising any issues of verdict defect or irregularity on appeal.

Ohio Power also asserts that the Appellants have waived their inadequacy claim on appeal by failing to raise an inconsistency objection when the verdict was returned. However, as the Appellants emphasize, their precise challenge on

## II.

### STANDARD OF REVIEW

██ In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), we explained that "[a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard." *Id.* at 104, 459 S.E.2d at 381. *See also Pauley v. Bays,* 200 W.Va. 459, 490 S.E.2d 61 (1997).

Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review. *Tennant,* 194 W.Va. at 104, 459 S.E.2d at 381.

## III.

### ADEQUACY OF VERDICT

██ In syllabus point three of *Biddle v. Haddix,* 154 W.Va. 748, 179 S.E.2d 215 (1971), we explained that a new trial is the appropriate resolution where a jury verdict is inadequate:

In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

Similarly, in syllabus point two of *Maynard v. Napier,* 180 W.Va. 591, 378 S.E.2d 456 (1989), we elaborated:

" 'Where a verdict does not include elements of damage which are specifically

proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves,* 151 W.Va. 449, 153 S.E.2d 165 (1967).' *King v. Bittinger,* 160 W.Va. 129, 231 S.E.2d 239, 243 (1976)." Syllabus Point 1, *Kaiser v. Hensley,* 173 W.Va. 548, 318 S.E.2d 598 (1983).

In syllabus point two of *Sullivan v. Lough,* 185 W.Va. 260, 406 S.E.2d 691 (1991), we addressed the issue of a possible mistaken view of the case by the jury, as follows:

" ' "A verdict of a jury will be set aside where the amount thereof is such that, when considered in light of the proof, it is clearly shown that the jury was misled by a mistaken view of the case." Syllabus Point 3, *Raines v. Faulkner,* 131 W.Va. 10 [48 S.E.2d 393 (1947) ].' Syllabus Point 2, *Keiffer v. Queen,* 155 W.Va. 868, 189 S.E.2d 842 (1972)."

██ However, we have also consistently maintained that determinations regarding the weight of the evidence and the credibility of witnesses are within the province of the jury. In syllabus point two of *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979), we stated that " '[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting.' Point 3, Syllabus, *Long v. City of Weirton,* W. Va., (1975) [158 W.Va. 741,] 214 S.E.2d 832." Similarly, in syllabus point four of *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), we explained that " '[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury on such facts will not ordinarily be disturbed by this Court.' Point 2 Syllabus, *Graham v. Crist,* 146 W.Va. 156, (118 S.E.2d 640.)"

---

appeal is neither to the verdict form nor any inconsistency of the jury verdict. Rather, their challenge is to the inadequacy of the damages awarded by the jury, which requires no trial objection to preserve the issue for appellate review. In its allegations of waiver, Ohio Power blurs the lines between three distinct issues: defective verdict forms, inconsistency of the verdict, and inadequacy of the damages. We find no merit to Ohio Power's claim of waiver in this case. We, therefore, address the merits of the Appellants' claims of inadequacy.

" 'When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894." Syllabus Point 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). In syllabus point two of *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991), we stated that "[w]e will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy."

In syllabus point three of *Walker*, we held as follows:

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

In syllabus point two of *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 461 S.E.2d 149 (1995), we explained:

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syl. pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)," Syl. Pt. 6, *McClung v. Marion County Comm'n*, 178 W.Va. 444, 360 S.E.2d 221 (1987).

In *Lenox v. McCauley*, 188 W.Va. 203, 423 S.E.2d 606 (1992), we reiterated that where a damage issue has been tried by a jury, the allegation of inadequate damages

should be weighed on appeal by viewing the evidence most strongly in favor of the defendant. *Id.* at 209, 423 S.E.2d at 612. We based our analysis upon the guidance of syllabus point one of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), as follows: "In an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." In *Lenox*, the appellant asserted that the jury's award for past medical costs was inadequate. The appellant had submitted evidence of medical expenses in the amount of $20,197.66; the jury awarded only $2,537.40 for medical expenses and lost wages. In viewing the evidence most strongly in favor of the appellee, we observed that the evidence showed that the appellant had received a minor non-permanent injury and that his condition had improved until he was involved in a subsequent unrelated accident. Additionally, the appellant had suffered physical and emotional problems prior to the accident. Based upon the conflicting evidence in *Lenox* regarding the causes of the appellant's ailments, we concluded that the jury's award was not inadequate when the evidence was viewed most strongly in favor of the appellee. 188 W. Va. at 209, 423 S.E.2d at 612.

In *Hewett v. Frye*, 184 W.Va. 477, 401 S.E.2d 222 (1990), trial in a personal injury action was held on the issue of damages. Mr. Hewett introduced evidence that he sustained the loss of eight teeth, a broken foot, broken toes, muscle damage in his lower legs, and various back and neck injuries. He asserted $16,940.00 in medicals, with $4,234.00 in chiropractic expenses and $770.00 in psychological treatment expenses being controverted since they were allegedly unrelated to the accident. Thus, only $11,936.00 in medical damages was proved by uncontroverted evidence. The jury awarded $11,712.93, approximately $223.00 less than the amount presented as uncontroverted medical damages. Upon appeal to this Court, we reasoned as follows in *Hewett*:

In *Kaiser*, [173 W.Va. at 549, 318 S.E.2d at 599], we encountered a situation similar to the one presented in this case. Special damages had been contested by the appellees in *Kaiser* on the ground that there

was no substantial causal relationship between the appellee's negligence and the injury allegedly sustained. We stated that resolution of such contested issues was within the province of the jury, and that the "judgments brought by the jury evidently represented their resolution of this conflict."

*Id.* at 479, 401 S.E.2d at 224. We therefore upheld the *Hewett* jury verdict, explaining that "[v]iewed most strongly in favor of the appellee, the evidence permits a conclusion by the jury that the appellant's psychological and mental disturbances were not causally related to the accident.... Consequently, we cannot conclude that the jury's failure to award damages for mental anguish renders the verdict inadequate as a matter of law." *Id.* at 480, 401 S.E.2d at 225.

Conversely, in *Hagley v. Short,* 190 W.Va. 672, 441 S.E.2d 393 (1994), the question of damages in a personal injury action had been submitted to a jury. Although the evidence was uncontroverted that the plaintiff lost wages and incurred medical expenses as a result of the incident, the jury awarded the plaintiff no damages. The plaintiff's motion for a new trial was denied by the circuit court. This Court reversed and remanded the case for a new trial upon the sole issue of damages. We stated that "[e]ven when the evidence is viewed most strongly in favor of the defendant, the jury award of zero damages is still inadequate." 190 W.Va. at 673, 441 S.E.2d at 394.

## IV.

### DAMAGES AWARDED AT TRIAL

With regard to the compensatory damages awarded in the case sub judice, the Appellants maintain that the jury verdict failing to award anything for pain and suffering is prima facie inadequate. The Appellants contend that they presented adequate testimony of some degree of pain and suffering incurred during the fall and that the jury verdict must be set aside.

Ohio Power emphasizes the conflicting evidence presented at trial and the necessity for jury resolution of the evidence. Ohio Power introduced evidence tending to discount the existence of pain and suffering and indicating that the shoulder pain was due to a preexisting shoulder injury and the subsequent shoulder injury which occurred at home. Ohio Power also asserts that, viewing the evidence most strongly in favor of the defendant, Mr. Marsch was merely "banged up" as a result of this incident. He testified at trial that he felt "okay" and "didn't feel too banged up" following his fall. He was checked and released at a local emergency room and returned to work the following day. He did not miss any work due to shoulder pain until after his subsequent shoulder injury incurred at home approximately six weeks later.

In syllabus point two of *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964), this Court explained as follows:

Compensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based. The amount of compensation for such injuries is left to the sound discretion of the jury, and there is no authority for a court to substitute its opinion for that of the jury. A mere difference in opinion between the court and the jury as to the amount of recovery in such cases will not warrant the granting of a new trial on the ground of inadequacy unless the verdict is so small that it clearly indicates that the jury was influenced by improper motives.

If the Appellants had presented their evidence of pain and suffering with no contradicting evidence presented by the Appellee, the jury's zero pain and suffering award would have been unfounded. However, the Appellee did indeed present the jury with evidence that the Appellant was released from the hospital the day of the accident, that he returned to work the day following the accident, that he thereafter performed strenuous work in his own home. The Appellee also introduced evidence of prior and subsequent injuries.

This Court has a responsibility to refrain from substituting its own judgment for that of the jury regarding the pain and suffering damages. We find that the ab-

sence of pain and suffering damages was supported by the evidence. The jury was presented with conflicting evidence, and some degree of difficulty was therefore encountered in separating the causes of any pain and suffering endured by the Appellant. As the Supreme Court of Illinois succinctly expressed in *Snover v. McGraw*, 172 Ill.2d 438, 217 Ill.Dec. 734, 667 N.E.2d 1310 (1996), a jury may award pain-related medical expenses and may simultaneously determine that evidence of pain and suffering was insufficient to support a monetary award. The *Snover* court emphasized that a determination of damages was within the discretion of the jury and that the element of pain and suffering was especially difficult to quantify. *Id.* at 1315. The plaintiff in *Snover* had few objective symptoms of pain, returned to school a few days after the injury, and was able to play tennis every day thereafter. As in the present case, the expert testimony regarding the plaintiff's injuries was in conflict, and there was no indication of jury mistake, confusion, partiality, or prejudice.

▆ The Appellants in the present case also contend that the jury improperly awarded nothing for future pain and suffering. The Appellant's medical expert had testified that the Appellant would suffer pain and discomfort in the knee and shoulder as a result of performing strenuous tasks in the future. The jury did award $55,000 in future medical expenses, presumably based upon the expected cost of knee replacement surgery, but failed to award anything for future pain and suffering. Ohio Power contends that such award is justified based upon the trial testimony indicating that Mr. Marsch would require knee replacement based upon the earlier knee injury, but that the industrial accident may have accelerated the need for this surgery. We find no inadequacy regarding the absence of a future pain and suffering award.

▆ The Appellants also argue that the jury award of no damages for loss of enjoyment of life and loss of ability to perform household services was error. Mr. Marsch testified that he had been unable to enjoy recreational activities due to constant pain.

However, Ohio Power presented evidence of Mr. Marsch's pre-existing injuries to both his shoulder and knee. After the July 1995 industrial accident, he suffered another shoulder injury at home. The Appellee presented evidence indicating that the tear in the rotator cuff and the surgery to the shoulder resulted from the injury incurred at home, not the industrial accident. Thus, viewed in the light most favorable to Ohio Power, it is conceivable that the jury concluded that Mr. Marsch's reduced enjoyment of life and his reduced ability to perform household services was not related to the industrial accident.

▆ The Appellants also maintain that the award of $10,000 for past lost earnings was inadequate and did not relate to any evidence submitted at trial. The Appellants proved that Mr. Marsch missed work for six months and thereafter received a lower wage, working in a less strenuous position. Including both wages and benefits for the six months in which Mr. Marsch was off and the remainder of the time he worked for lower wages, he submitted evidence that he lost $53,000. The Appellee emphasized, however, that Mr. Marsch's July 1995 industrial accident did not cause him to miss any work. His work absences, according to the Appellee's evidence, were necessitated by the shoulder surgery incurred at home. The only decrease in salary directly attributable to the industrial accident, according to the Appellee's theory of the case, was in conjunction with his relegation to a lower paying position after his fall. According to the Appellee, the jury's award of $10,000 was premised upon that decrease in salary.

▆ The Appellants also assert that the punitive damage award of $15,000 was inadequate and suggest that the punitive damage award was tainted by bias, confusion, or improper motivation. The Appellee maintains that the punitive damage award returned by the jury was adequate under the facts of the case, to the extent that there was no evidence of willful misconduct by Ohio Power and it did not try to conceal any facts. Given the absence of evidence of wilfulness, wan-

tonness, malice, or other aggravating factor[7] by the Appellee, we do not find $15,000 in punitives to be inadequate.[8]

■ The Appellants contend that the jury erred by failing to award damages for loss of consortium, with respect to Mr. Marsch's wife and children. Mrs. Marsch testified that her husband's injuries had adversely affected their relationship and the relationship between the children and their father, due to his physical inability to participate in activities. The Appellee introduced evidence indicating that Mr. Marsch continued to perform chores and other projects at home after the accident. The evidence also indicated that he continued to hike and climb rocks with his daughter and play baseball with his son. Once again, the evidence regarding the degree of the alleged loss was controverted, and viewing the evidence most strongly in favor of Ohio Power, it does not appear that the jury verdict was unwarranted.

■ The case sub judice does not appear to present us with the situation contemplated in *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), cert. denied, *W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), wherein a jury "verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice...." 193 W.Va. at 126, 454 S.E.2d at 420. This case presented conflicting evidence to the jury regarding the degree of injury suffered by the plaintiff as a result of the industrial accident. The Appellant had suffered unrelated injuries prior to the industrial accident, he missed no work

immediately following the fall, and he suffered another shoulder injury at home subsequent to the work injury which necessitated surgery and absences from work. The jury was presented with abundant conflicting evidence from the opposing sides, and it reached a conclusion. "Like a finding of liability, an award of damages, is a factual determination reserved for the jury." *Bressler v. Mull's Grocery Mart*, 194 W.Va. 618, 461 S.E.2d 124 (1995). We find no evidence of bias, confusion, or mistake in this matter; there is no allegation of error regarding the testimony received or the instructions provided to the jury; and we do not find the damages to be inadequate.

Viewing this matter on appeal in a light most favorable to the Appellee, we find that the underlying civil action was fairly tried before a competent jury in the lower court, and we affirm the decision of the jury and the determination of the lower court that a new trial was unnecessary. The lower court did not abuse its discretion in refusing to grant a new trial.

Affirmed.

Justice SCOTT did not participate in the decision in the Court.

Judge STONE, sitting by temporary assignment.

STARCHER, Chief Justice, dissenting:

(Filed Jan. 10, 2000)

Our law is well settled on how circuit courts are supposed to deal with muddled jury verdicts. When a jury verdict does not include elements of damages that were spe-

---

**7.** " 'Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong.' Syllabus Point 1, *O'Brien v. Snodgrass*, 123 W.Va. 483, 16 S.E.2d 621 (1941)." Syl. Pt. 4, *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982).

**8.** The Appellee asserted a cross-assignment of error alleging that the lower court erred in permitting the jury to consider an award of punitive damages. The Appellee based this claim upon our established principle that "[p]unitive damage

instructions are legitimate only where there is evidence that defendant acted with wanton, willful, or reckless conduct, or criminal indifference to civil obligations affecting rights of others to appear, or where the legislature so authorizes." Syl. Pt. 7, *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994). As the Appellants emphasize, however, there was sufficient evidence of reckless conduct to submit the issue of punitive damages to the jury. The Appellants had presented evidence tending to suggest that the Appellee had exhibited reckless disregard for the danger it had created by failing to secure the area surrounding the hole in the floor. We find no error in the lower court's submission of the punitive damages issue to the jury for resolution.

cifically proven to exist, and exist in substantial amounts, then the verdict is inadequate and must be set aside. Syllabus Point 2, *Hall v. Groves,* 151 W.Va. 449, 153 S.E.2d 165 (1967). When a jury verdict is so confusing that it shows the jury was misled, mistaken or confused about the case, the verdict must be set aside. Syllabus Point 3, *Raines v. Faulkner,* 131 W.Va. 10, 48 S.E.2d 393 (1947).

The verdict in this case is a muddled mess. The jury awarded the plaintiff his economic damages on the basis of severe, obviously debilitating injuries. But the jury then ignored the pain and problems obviously caused by such debilitating injuries.

The defendant-appellees in this case were plainly negligent—a hole in the floor of their electric plant was left open and unguarded, and plaintiff-appellant Marsch fell through the hole. The defendant-appellees admitted liability. The unresolved issue was the causation and extent of the injuries, if any, sustained by Mr. Marsch in the fall.

As a result of the workplace fall, Mr. Marsch claimed he sustained a minor injury, diagnosed as a right shoulder strain, and he was assigned to light duty in the tool shed at work. Six weeks later, while Mr. Marsch was working at home he felt a severe pain in his right shoulder. He was diagnosed with having a full tear of the right rotator cuff, and missed work for 6 months. A little over 13 months later, Mr. Marsch complained of a right knee problem. A medical expert for Mr. Marsch opined that both the torn rotator cuff and the knee problem were a result of the original workplace injury.

The jury question in this case obviously boiled down to this: were the torn rotator cuff and the knee injury caused by the negligence of the defendant-appellees? If the jury answered "yes," the plaintiff should have received his full damages, both economic and non-economic; if "no," the plaintiff should have recovered either nothing, or only for damages for a minor right shoulder strain.

The jury's verdict was, instead, equivocal. The jury determined that "yes," Mr. Marsch's torn rotator cuff *and* knee injury were the result of the defendant's negligence, and awarded Mr. Marsch his past and future lost wages, and past and future medical expenses. But the jury did not award the plaintiff damages for past and future pain and suffering, loss of enjoyment of life, or loss of an ability to perform household services, and did not award consortium damages to the plaintiff's family. The jury either concluded that the plaintiff didn't have these damages, or that these damages were not proximately caused by the defendant's negligence.

This verdict is totally in conflict with the evidence presented at trial, and more importantly, is inconsistent. How could the jury conclude that Mr. Marsch, whose job involved physical labor, was entitled to lost future wages because his injury precluded him from working, but simultaneously conclude that the injury does not preclude him from working around the house? How could the jury possibly conclude that the torn flesh of a rotator cuff, and knee replacement surgery to fix ripped ligaments, were so inconsequential as to not cause pain for the plaintiff? So inconsequential to not affect his relations with his wife and children? The majority's focus on the fact that the plaintiff "didn't feel too banged up" after his fall and returned to work on light duty the next day is meaningless in light of the fact that 6 weeks after the fall, the plaintiff sustained an excruciating complete tear to his rotator cuff and missed work for 6 months.

The evidence in this case tells me that Mr. Marsch is a rough-and-tumble guy who gritted his teeth and went to work despite the pain. The evidence suggests that the plaintiff might have partially torn his rotator cuff in the fall through the floor. Most people would have taken a few days off work after suffering such a fall and injuring their shoulder and knee. Mr. Marsch classified the pain as feeling a bit "banged up," toughed it out for a paycheck, and went back to work light duty in the tool shed. The mere fact that the plaintiff was so injured that he could only do "light duty" tells me he was suffering pain from the fall—and therefore, the jury should have awarded the plaintiff some damages for pain and suffering.

It frustrates me to see a person like Mr. Marsch do the right thing, to suffer through

the pain with a smile and keep on working, and get penalized. The evidence all points to the fact that the plaintiff had an injury, he had pain, and that he and his family suffered as a result of the injury. When the jury's verdict awarded the plaintiff damages only for his economic losses, and totally ignored these "non-economic" losses, the jury's verdict was obviously the result of some confusion, mistake, misunderstanding or bizarre, illegal compromise.

I believe the verdict in this case was inadequate and was the result of confusion or mistake. Under our well-established legal principles, the verdict should have been set aside. I therefore dissent and am authorized to state that Justice McGraw joins in this dissent.