640 S.E.2d 136 (2006)
STATE of West Virginia ex rel. VALLEY RADIOLOGY, INC., D/B/A Valley Radiologists, a West Virginia Corporation, Defendant/Petitioner,
v.
The Honorable Martin J. GAUGHAN, Respondent,
Margaret Ann Bates, Individually and as the Administrator of the Estate of Ttahewm Joseph Bates and Two Minor Children (CMB and BMB) and Derak T. Bates (an Unemancipated Adult Beneficiary), Plaintiffs.
No. 33173.
Supreme Court of Appeals of West Virginia.
Submitted: November 1, 2006.
Decided: November 29, 2006.
William Crichton, V, William Crichton, VI, Crichton & Crichton, John H. Tinney, John K. Cecil, The Tinney Law Firm, PLLC, Charleston, for the Respondent, The Honorable Martin J. Gaughan.
Thomas J. Hurney, Jr., Rob J. Aliff, Jonathan L. Anderson, Jackson Kelly, PLLC, Charleston, for Defendant/Petitioner.
ALBRIGHT, Justice.
Petitioner Valley Radiology, Inc. seeks a writ of prohibition from this Court to prevent the enforcement of an order entered by the Circuit Court of Ohio County on May 24, 2006, granting Respondents, the wife and children of the deceased Joseph Bates, a new trial solely on the issue of damages in connection with a wrongful death action. Upon our review of this matter, we determine that the trial court did not abuse its discretion in awarding a new trial solely on the issue of damages. Accordingly, we refuse to issue the requested writ of prohibition.

I. Factual and Procedural Background
Respondents initiated a wrongful death action against Petitioner through which they alleged that Petitioner's failure to timely diagnose blood clotting when interpreting an MRI of the decedent's brain[1] resulted in the untimely death of Mr. Bates on October 8, 2000. The trial in this matter began on February 6, 2006, with individual voir dire consuming most of the day. At approximately 5:30 p.m., when the parties were preparing to make their peremptory strikes of the proposed jurors, the trial court was advised by Respondents' counsel that a potential issue of bias might exist among the jury panel.
*138 The three respondent sons of Mrs. Bates related through counsel that they overheard derogatory comments from several of the potential jurors while counsel and the trial court were engaged in voir dire. They identified three specific jurors as having commented that the Respondent/Plaintiff and her sons "better be churchgoers" and that "money damages aren't warranted in a death case like this, it's not going to bring anybody back and it's just going to increase our insurance rates." After being apprised of this information, the trial court decided to bring in the three jurors who had purportedly made these comments to inquire as to the veracity of the claims. Although the trial court determined in advance that these three jurors would be dismissed for cause regardless of their responses, the trial judge chose to question the potential jurors about these specific allegations as well as the implication that there was an inappropriately jovial atmosphere among the members of the jury panel.
Following its questioning of the specific jurors identified by Respondents, the trial court proceeded to probe the remainder of the jury panel to determine whether their ability to fairly assess the case had been tainted or otherwise affected by the alleged comments of the three dismissed jurors. Several of the jurors testified that they had overhead statements by other individuals with regard to the effect medical liability cases had on health insurance rates. One potential juror stated that she overheard someone opining that "plaintiff attorneys are driving medical costs up" and also that "a lot of awards are just ridiculous." This same juror, when asked whether his ability to judge this case was affected by such statements, responded with: "I have to admit that the talk among the jurors is biased against the plaintiff. It's just the talk that I heard it's justit's all fairly biased." Upon further questioning as to whether the alleged bias was limited to a few jurors or widespread, this same juror indicated: "It's my sense that most of them were talking . . . I think there's a fair amount of bias. That's just my unlearned opinion, but I think there's a fair amount of bias."
When the trial court completed its questioning of the jurors, plaintiffs' counsel chose to proceed with this particular jury panel despite having expressed "grave concern" on behalf of his clients initially as to whether the panel could fairly judge the case in view of the bias allegations. The record clearly reflects this decision to proceed as defense counsel initially inquired and was advised that plaintiffs' counsel had no objection to the panel and then the trial court followed up by specifically asking plaintiffs' counsel whether he wished to proceed with this particular panel:
The Court: Okay. Although since we haven't empaneled the jury yet this would not be an appropriate time to move for a mistrial. But I would just caution all the parties that I think that we're in a situation very similar to the one where you make an objection of some type and then you don't follow it up by requesting a relief such as a mistrial, so that, you know, we're not going to be looking at this situation again. So at this point, as far as I can tell, there is no objection to the selecting the jury from the first ten names that were pulled and qualified; is this correct?
Plaintiffs: That's correct.
Following the exercise of peremptory strikes, the jury was empaneled around 8:30 p.m. on that same date.
On February 10, 2006, the case was submitted to the jury. After deliberating for approximately three hours, the jury submitted a question to the trial court. The jury asked, and the trial court responded in the affirmative, whether it was required to award the stipulated amounts of medical and funeral expenses. Shortly after obtaining that answer, the jury returned its verdict. The jury found that the Petitioner/Defendant had deviated from the standard of care in its treatment of Mr. Bates and that such deviation proximately resulted in his death. The jury awarded $158,271.79 in damages, which was the total amount of the stipulated medical and funeral expenses. In making its award of damages, the jury did not include any amount for sorrow and mental anguish or for lost income despite the separate designation *139 on the verdict form of these types of permissible damages.
Following the delivery of the verdict, the trial court returned the jury to its deliberations room and then informed counsel that it believed there was a problem with the adequacy of the jury's damage award. The trial court inquired of plaintiffs' counsel whether he wished to have the verdict form returned to the jury with instructions to deliberate further and to return an award that included damages for sorrow and mental anguish and reasonably expected loss of income. When plaintiffs' counsel rejected this offer for additional deliberations, the jury was dismissed.
On February 21, 2006, Respondents/Plaintiffs filed a motion for a new trial on the grounds that the verdict was "clearly mistaken and manifestly inadequate" in view of the jury's failure to award damages for lost income where the evidence on this issue was uncontroverted as well as the jury's failure to award any damages for pain and suffering. A hearing was held on this motion on April 18, 2006, and the trial court indicated the following:
The Court is also of the opinion that the fact that the jury asked if they were required to award the amount of damages for medical bills and funeral expenses, which were typed on the form, demonstrated some prejudice on the part of the jury against the doctor (sic). The jury was clearly misled as to the duty to award damages. There was no misunderstanding of the duty to award damages, they just did not in fact want to give this family any money that they were not required by the Court to do so.
As a result of the trial court's conclusion that the jury was prejudiced in some fashion "perhaps not against the family, but in favor of the doctor or doctors in general," the trial judge granted the motion of Respondents/Plaintiffs for a new trial limited solely to the issue of damages.
Through this request for extraordinary relief, Petitioner seeks to deny the grant of the new trial solely on the issue of damages or, alternatively, to require that a new trial be granted on all issues.

II. Standard of Review
The standard against which we determine whether to issue a writ of prohibition is well ensconced in the law:
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
Syl. Pt. 4, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996). With regard to the granting of a new trial, our review is more limited: "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syl. Pt. 3, in part, In re State Public Bldg. Asbestos Litigation, 193 W.Va. 119, 454 S.E.2d 413 (1994).
With these standards in mind, we proceed to determine whether any error was committed by the circuit court below.

III. Discussion
At the heart of Petitioner's argument is its contention that Respondents waived their right to seek relief from the verdict on grounds of inadequacy by refusing the trial court's offer to have the jury instructed to deliberate further on the issue of damages. In a similar vein, Petitioner maintains that *140 Respondents waived entitlement to any post-verdict relief related to any possible bias among the jury panel based on their decision to proceed with the jury panel while having knowledge of apparent bias in favor of the Petitioner before the trial began.
As support for its position that Respondents waived their right to seek relief from an inadequate verdict by not agreeing to allow the jury to redeliberate the issue of damages, Petitioner cites this Court's decision in Combs v. Hahn, 205 W.Va. 102, 516 S.E.2d 506 (1999). In Combs, we established a general rule that absent an objection to a jury verdict form prior to the jury's discharge, any defect or irregularity in the verdict form is deemed to have been waived. At issue in Combs was the plaintiff's failure to object prior to the jury's dismissal to a verdict form that bore no marks on the blank corresponding to the category of general damages and similarly had no amount indicated on the line where the total amount of damages was to be specified. The only amount indicated on the verdict form was $16,125.00, which was designated in the blank allotted for past medical bills.
Recognizing that a litigant has a responsibility to timely object to a verdict form that is irregular in form, we held in syllabus point two of Combs: "Absent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form." 205 W.Va. at 103, 516 S.E.2d at 507. Based on the presence of extenuating circumstances in Combsthe trial court's failure to show trial counsel the verdict form before dismissing the jurywe found that the plaintiff had not waived his right to object to the verdict form. See id. at 108, 516 S.E.2d at 512.
Petitioner suggests that this case falls squarely into the general rule of waiver announced in Combs. We disagree. In contrast to Combs where the jury simply left two blanks without any number on them at all, the jury in this case inserted a zero on the lines designated on the verdict form for making an award to compensate the Respondents for pain and suffering and lost income. Whereas in Combs there was uncertainty that remained following the dismissal of the jury due to the incompleteness of the verdict form, in the case sub judice there was no confusion as to what the jury intended to award. Unlike the situation present in Combs where the judge alone reviewed the verdict form prior to the jury's dismissal, trial counsel in this case had the opportunity to review the jury verdict form before the jury was discharged.
While Petitioner maintains that the language of syllabus point two in Combs compels the conclusion that Respondents waived their right to seek a new trial on the issue of damages given their failure to object to the verdict form, the facts of this case are clearly distinguishable. As noted above, the verdict form in this case was complete in the sense that every blank had been filled in with a number. Two other circumstances[2] strongly suggest that the general waiver rule established in Combs is inapplicable. First, as Respondents argue, the trial court on its own recognized the inadequacy of the verdict upon learning that the jury had failed to make any award for pain and suffering and lost income despite the introduction of evidence on those types of damages. Second, it is arguable that Respondents made a legitimate strategy decision in turning down the trial court's offer to direct the jury to deliberate further. Given the circumstances surrounding the selection of the jury combined with the verdict reached by the jury, Respondents' counsel had the right to decide that there was little value and, in fact, potential harm in resubmitting the issue of damages to this particular jury. The trial judge echoed this concern by recognizing in its order *141 granting a new trial on damages that "it would not have been practical to send the same jurors back to consider the issue of damages because there was almost no chance they could return a fair verdict."
Petitioner seemingly groups all instances of verdict challenges together for purposes of addressing the issue of waiver. This Court, however, recognized in Marsch v. American Electric Power Co., 207 W.Va. 174, 530 S.E.2d 173 (1999), that there are at least three distinct bases for challenging a verdict and that the issue of waiver is evaluated according to the specific basis cited for appeal of the verdict. Rejecting the defendant's claim in Marsch that the plaintiffs had waived their right to claim inadequate damages based on their failure to object to the language used on the verdict form, we reasoned:
The defect in Combs was the jury's failure to place any dollar amount on the verdict form for general damages. In the present case, a zero was placed on the appropriate lines for the jury's determination of damages, and the Appellants are not raising any issues of verdict defect or irregularity on appeal.
Ohio Power also asserts that the Appellants have waived their inadequacy claim on appeal by failing to raise an inconsistency objection when the verdict was returned. However, as the Appellants emphasize, their precise challenge on appeal is neither to the verdict form nor any inconsistency of the jury verdict. Rather, their challenge is to the inadequacy of the damages awarded by the jury, which requires no trial objection to preserve the issue for appellate review. In its allegations of waiver, Ohio Power blurs the lines between three distinct issues: defective verdict forms, inconsistency of the verdict, and inadequacy of the damages. We find no merit to Ohio Power's claim of waiver in this case.
Marsch, 207 W.Va. at 179-80, n. 6, 530 S.E.2d at 178-79, n. 6 (emphasis supplied).
Rather than Combs, the instant case more closely mirrors that of Marsch where the basis for objecting to the jury's verdict was the adequacy of the damage award and not a defect in the verdict form itself. Critically, the objective that underlies the general rule of requiring that an objection to the verdict form must be made prior to the jury's discharge is to provide the trial court with an opportunity to "cure" any alleged defect or irregularity in the form prepared by the jury. No similar opportunity to cure is required for an inadequate award of damages.[3] This is because a request for a new trial based on the inadequacy of damages is not a procedural objection to the verdict form, but a substantive objection to the amount of damages awarded in view of the evidence presented and the findings of the jury as to fault. Consequently, there is no basis for invoking the waiver rule established by this Court in Combs when the post-trial objection is solely to the adequacy of the damages.
To clarify our previous ruling in this area, we hold that the general rule of waiver established by this Court in Combs, which requires that any objections to the verdict form based on defect or irregularity be made prior to the jury's dismissal, is not applicable to post-trial motions seeking relief based on the inadequacy of the damages awarded. Because the basis for Respondents' new trial motion was the inadequacy of the jury award rather than a procedural objection to the form of the jury verdict, we do not find any basis for applying the general rule of waiver announced by this Court in Combs. See 205 W.Va. at 103, 516 S.E.2d at 507, syl. pt. 2.
Based on the foregoing, we do not find that the trial court abused its discretion in awarding a new trial to Respondents solely on the *142 issue of damages.[4] Accordingly, we refuse to grant the writ of prohibition requested by Petitioner.[5]
Writ denied.
NOTES
[1] The MRI was taken by Petitioner on September 7, 2000.
[2] This Court fully recognized that there are exceptions to the general rule of waiver announced in Combs by explicitly providing that the presence of "extenuating circumstances" in a given case may counsel against waiver. See Combs, 205 W.Va. at 103, 516 S.E.2d at 507, syl. pt. 2. Such extenuating circumstancesthe failure of the trial court to show trial counsel the verdict form prior to the jury's dischargewere relied upon by this Court in Combs to prevent waiver and to allow a new trial to be held on damages alone.
[3] We reject without further discussion Petitioner's argument that Respondents waived their right to challenge the inadequacy of the verdict by permitting this particular jury panel to hear the case. The facts of this case simply do not suggest that Respondents sat on knowledge of potential bias and delayed notifying the trial court of any such concern. But see Syl. Pt. 4, Legg v. Jones, 126 W.Va. 757, 30 S.E.2d 76 (1944) (holding that plaintiff waived right to challenge verdict on grounds of bias and prejudice by failing to timely apprise the court of such concerns).
[4] Petitioner challenges the trial court's decision to grant a new trial solely on damages, rather than a new trial on all issues based on its characterization of this case as a Freshwater type four case. See Freshwater v. Booth, 160 W.Va. 156, 233 S.E.2d 312 (1977), overruled, in part, by Linville v. Moss, 189 W.Va. 570, 433 S.E.2d 281 (1993) (categorizing inadequate jury awards into four typologies and describing type four as case where liability was clearly established and jury was confused only as to measure of damages). Based on the limited record submitted in this extraordinary remedy case, we cannot engage in the full review necessary to disagree with the trial court's determination on this issue.
[5] Respondents correctly argue that Petitioner had a preferable method of bringing this matter to the Court for review and that was by direct appeal. Clearly, the grant of a new trial is subject to a direct and immediate appeal. See Syl. Pt. 1, Hundley v. Martinez, 151 W.Va. 977, 158 S.E.2d 159 (1967) (recognizing that "[a] party to a controversy in any circuit court may obtain from this Court an appeal in any civil case where there is an order granting a new trial and such appeal may be taken from the order without waiting for a new trial to be had"). For reasons unclear to this Court, Petitioner chose the procedural method of review which requires as a prerequisite to granting relief that no other adequate remedy is available. See Syl. Pt. 4, Berger, 199 W.Va. at 14-15, 483 S.E.2d at 14-15.