# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2018-NMSC-032

Filing Date:  April 30, 2018

Docket No. S-1-SC-35515

ESTATE OF CHARLES ANTHONY SAENZ,
by and through his personal representative,
VIRGINIA SAENZ, individually and as
next friend of ROBIN BRANDY SAENZ,
minor child, MARCUS ANTHONY SAENZ,
and JASON RAY SAENZ,

       Plaintiffs-Respondents and Cross-Petitioners,

v.

RANACK CONSTRUCTORS, INC.,

       Defendant-Petitioner and Cross-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Manuel I. Arrieta, District Judge

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Jocelyn C. Drennan
Albuquerque, NM

for Petitioner and Cross-Respondent

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

Scherr & Legate, P.L.L.C.
Maxey M. Scherr
El Paso, TX

Cervantes Law Firm, P.C.
K. Joseph Cervantes
Las Cruces, NM

**OPINION**

**MAES, Justice.**

**{1}**    In this wrongful death action, the jury returned a special verdict that awarded damages to the individual loss-of-consortium claimants but not to the decedent's estate.  The decedent's surviving spouse and children (collectively Plaintiffs) filed a motion for a new trial, arguing that the award of zero damages to the estate was not supported by substantial evidence.  The issue before this Court is whether Plaintiffs waived the right to challenge the jury verdict on appeal by failing to object to the verdict prior to the jury's discharge.  We conclude that they did.

**{2}**    A party is deemed to have waived a challenge to an ambiguous, inconsistent, or incomplete jury verdict if the party had an opportunity to raise the objection before the jury was discharged but failed to do so.  In this case, Plaintiffs created ambiguity in the verdict by modifying the uniform jury instruction on wrongful death damages and drafting the special verdict form in a way that failed to advise jurors how to allocate damages between the individual loss-of-consortium claimants and the decedent's estate.    During its deliberations, the jury submitted a question to the district court which confirmed that the jury was confused about how to allocate damages on the special verdict form.  As a result of this confusion, it is unclear whether the jury deliberately intended to award zero wrongful death damages to the estate or whether the jury mistakenly included wrongful death damages in its award to the individual claimants.  We hold that Plaintiffs waived the right to challenge the verdict on appeal because they contributed to ambiguity in the verdict and failed to object to the verdict prior to the jury's discharge.

## I.    FACTS AND PROCEDURAL HISTORY

**{3}**    Charles Anthony Saenz (Tony), an ironworker, was killed while working on a construction project to build a new movie theater in Las Cruces.  Defendant Ranack Constructors, Inc. (Ranack) was the general contractor for the project.  Tony fell off a thirty-foot wall while erecting the steel framework for the theater, hitting the ground head first.  Tony was transported to the hospital by ambulance and was pronounced dead a few minutes later.

**{4}**    Tony's spouse, Virginia Saenz, filed this wrongful death lawsuit against Ranack in three different capacities: individually, as the personal representative for Tony's estate, and as next friend of the couple's minor daughter Robin Saenz.  The couple's adult sons, Marcus and Jason Saenz, also joined as plaintiffs.  Plaintiffs asserted claims of negligence and premises liability and sought damages for wrongful death and loss of consortium.

**{5}**    At the jury trial, the parties presented conflicting evidence concerning damages.

Plaintiffs presented evidence that Tony was devoted to his immediate and extended family, advised and counseled his daughter and sons, helped with housework and cooking, was building an addition to the family home, was a talented amateur artist, had a good sense of humor, and liked to sing and dance at family events. Virginia testified that Tony was in excellent health, and a stipulated jury instruction advised the jury that Tony, who was forty-eight years old when he died, could have been expected to live for another thirty years. Virginia testified that Tony's take-home wages averaged $400 a week and that if Tony had continued to work in his construction job for the next twenty-two years with no time off, until he reached the age of seventy, his total after-tax wages would have been approximately $450,000.

{6}    Ranack, on the other hand, presented evidence of Tony's history as a habitual criminal offender; his often strained relationship with Virginia, including a divorce in 1986 before they remarried; his failure to continually support the family; and his absences from the family home. Ranack elicited testimony from Virginia that her husband had worked erratically during the early years of their marriage and that Virginia was the sole source of the family's support when Tony was in prison.

{7}    Plaintiffs drafted a jury instruction on wrongful death damages, based on UJI 13-1830 NMRA (2008) (UJI 13-1830), which was given to the jury as Instruction No. 17. Instruction No. 17 provided that if the jury found Ranack liable, then the jury

> must then fix the amount of money which you deem fair and just for the life of Charles Anthony Saenz, including in your award compensation for any of the following elements of damages proved by the evidence:
>
> 1.    The reasonable expenses of necessary medical care and treatment and funeral and burial;[1]
>
> 2.    The lost earnings, the earning capacity and the value of the lost household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy. In considering loss of earnings or earning capacity, deductions must be made for income taxes, social security taxes, other taxes, and personal living expenses of the deceased. The damages set forth in this paragraph are damages for future loss of money and are paid in a lump sum. Therefore, a reasonable discount must be made for the future earning power for the damages awarded;

---

[1]During closing argument, Plaintiffs' counsel told the jury that the amount of medical and funeral expenses were no longer at issue because the parties had stipulated to an amount. The stipulated amount, reduced for comparative fault, was later included in the judgment as an award to the decedent's estate.

3.   The value of the deceased's life apart from his earning capacity;

4.   The mitigating or aggravating circumstances attending the wrongful act, neglect or default;

5.   The emotional distress to the children of the decedent caused by the loss of society, guidance, and companionship, enjoyed with the deceased; and the emotional distress to the spouse of the decedent caused by the loss of society, guidance, companionship, and sexual relationship enjoyed with the deceased;

6.   The loss of guidance and counseling to the deceased's minor child.

7.   You may also consider the loss to the beneficiaries of other expected benefits that have a monetary value. While the presence or absence of a measurable monetary loss to beneficiaries is a factor for consideration, damages may be awarded even where monetary loss to the surviving beneficiaries cannot be shown.

**{8}** Plaintiffs made two modifications to UJI 13-1830 that have been at issue on appeal. First, the manner in which Instruction No. 17 identified the Plaintiffs differed from the standard language set forth in UJI 13-1830. UJI 13-1830 provided that the plaintiffs in a wrongful death case should be identified as follows:

This lawsuit has been brought by _____ (*plaintiff*) [individually and] on behalf of the surviving beneficiaries of _____ (*name of decedent*) who is now deceased. The surviving beneficiaries are _____ (*names of surviving beneficiaries*).

UJI 13-1830. In Instruction No. 17, Plaintiffs replaced "on behalf of the surviving beneficiaries" with "on behalf of the estate," as follows:

The lawsuit has been brought by Virginia Saenz, Individually and *on behalf of the estate* of Charles Anthony Saenz, who is now deceased. The surviving spouse is Virginia Saenz. The surviving beneficiaries are Robin Brandy Saenz, Marcus Anthony Saenz, and Jason Ray Saenz.

(Emphasis added.)

**{9}** Second, Instruction No. 17 erroneously included two inconsistent provisions concerning loss-of-consortium damages. One of those, the fifth numbered provision, was included as an element of damages the jury could award if proved by the evidence. *See* UJI 13-1830, ¶ 6 (permitting the jury to award damages for "emotional distress . . . caused by the

4

loss of [society,] [guidance,] [companionship] and [sexual relations] enjoyed with the deceased"). The other provision was located at the end of the last sentence of the instruction and directed the jury that the amount of damages "*must not* . . . be influenced by . . . the loss of the deceased's society to the family." (Emphasis added.) In UJI 13-1830, these two conflicting provisions were set forth in brackets, and the Use Note explained that the provisions should be used in the alternative depending on the circumstances of the case. *See* UJI 13-1830, Use Note (explaining that if the personal representative is also the surviving spouse, the instruction should include the paragraph describing loss-of-consortium damages and should exclude the bracketed language at the end of the last sentence).

{10} Plaintiffs' proposed wrongful death damages instruction included both of these conflicting provisions, but during a jury instruction conference, Plaintiffs' counsel asked the district court to remove the loss-of-consortium provision from the end of the last sentence. Plaintiffs' counsel argued that the provision stating that the amount of damages must not be influenced by "the loss of the deceased's society to the family" was inconsistent with the numbered provision that permitted the jury to award damages for loss of consortium. In making this argument, Plaintiffs did not refer the district court to the Use Note for UJI 13-1830. The district court denied Plaintiffs' request to remove the provision because it was "part of the stock instruction."

{11} Plaintiffs also drafted the special verdict form that was given to the jury. The special verdict form provided five separate lines for jury findings of total damages suffered by (1) "Virginia Saenz, Individually"; (2) "Robin Brandy Saenz"; (3) "Marcus Anthony Saenz"; (4) "Jason Ray Saenz"; and (5) "the Estate of Charles Anthony Saenz." The special verdict form did not break out the various elements of damages enumerated in Instruction No. 17. *See* UJI 13-1830, Use Note (explaining that "various elements of damages can be broken out separately on the special verdict form if the court determines that there is a need to do so in order to identify damages recoverable by the estate, by the statutory beneficiaries and by the surviving spouse . . . for loss of consortium").

{12} During its deliberations, the jury sent a note to the district court, indicating that the jury was unsure how to fill out the special verdict form. The jury asked, "Does 'total amount of damages to the Estate of Charles Saenz' include all amounts awarded to Virginia, Robin and sons, or is it meant to be a separate amount?" The district court judge discussed the note with counsel. Plaintiffs' counsel explained that the estate line on the verdict form was "obviously . . . asking for the value of the life of Charles Saenz, which is a different damage amount than the other individual plaintiffs," and suggested that the district court could answer "Yes." The district court judge responded, "Well, the problem is another question will probably come back, and that will be, What is the estate entitled to? I'm looking at the damages instruction for wrongful death, and I am not quite sure if it itemizes the damages for the estate." The district court suggested answering that "it is separate and please refer back to the damages instruction." The parties stipulated that the district court should answer, "The 'total amount of damages to the Estate of Charles Saenz' is separate."

5

**{13}** About fifty minutes later, the jury returned a special verdict in Plaintiffs' favor that awarded compensatory and punitive damages. The district court read the special verdict form aloud in open court. The jury assigned 45% of the fault to Ranack; 30% of the fault to Tony's employer, a steel erection subcontractor that is not a party to this appeal; and 25% of the fault to Tony himself. Regarding compensatory damages, the jury awarded $482,000 to Virginia Saenz, individually; $50,000 to Tony's minor daughter Robin; and $25,000 each to Tony's adult sons Marcus and Jason. The jury entered "$0" on the line for "damages suffered by the Estate of Charles Anthony Saenz." The jury also awarded $10,000 in punitive damages to each of the individual plaintiffs, but the jury entered "$0" on the line for punitive damages to the estate. The district court polled the jury at Plaintiffs' request, and the jurors indicated that the verdict was unanimous. The district court discharged the jury without objection from either party.

**{14}** About two weeks later, Plaintiffs filed a motion seeking a new trial on the ground that the jury's award of zero dollars to the estate was not supported by substantial evidence. At a post-trial motion hearing, Plaintiffs suggested that the jury may have been confused by Instruction No. 17's use of the phrase "Estate of Charles Anthony Saenz." The district court judge agreed that the jury may have been confused, noting that Instruction No. 17 and the verdict form appeared to refer to two different things. Specifically, Instruction No. 17 directed the jury to assign a value to the decedent's *life*, while the special verdict form provided a line for the jury to award damages to the decedent's *estate*. The judge concluded that although Instruction No. 17 may have been confusing or incorrect, Plaintiffs may have waived the right to object because Plaintiffs submitted the instruction. The judge observed that when the jury asked a question about the special verdict form, the parties failed to explain how to award damages for the value of the decedent's life. The judge concluded that although the jury may have "felt, for whatever reason, that the value of life was zero[,] . . . I can't, as a Judge, go back behind the mind of the jury and try to figure out what it was that they were thinking." The district court denied Plaintiffs' motion for a new trial, explaining that "the issue about the estate and the value of life" would need to be resolved on appeal.

**{15}** On appeal to the Court of Appeals, Plaintiffs argued that "jury confusion arising from conflicting instructions as to loss of consortium may have led the jury to mistakenly award to [Virginia Saenz] and to Saenz's children damages that should have been awarded to the estate." *Estate of Saenz ex rel. Saenz v. Ranack Constructors, Inc.*, 2015-NMCA-113, ¶ 14, 362 P.3d 134, *cert. granted* 2015-NMCERT-010. The Court of Appeals recognized that Instruction No. 17 erroneously included the two conflicting loss-of-consortium provisions, contrary to the Use Note for UJI 13-1830. *Saenz*, 2015-NMCA-113, ¶¶ 44-46. But the Court of Appeals declined to reverse based on this error because Plaintiffs had failed to demonstrate prejudice. *Id.* ¶¶ 46-49.

**{16}** Alternatively, Plaintiffs argued in the Court of Appeals "that the zero damages award to the estate was not supported by substantial evidence." *Id.* ¶ 14. Ranack countered that Plaintiffs had waived their claim of insufficient evidence by failing to raise it before the jury was discharged. *See id.* ¶ 50. The Court of Appeals relied on case law from other states to

conclude that the waiver rule "applies only to challenges of a jury verdict based on inconsistency, ambiguity, or indefiniteness" and not "to motions for a new trial based on a lack of substantial evidence under Rule 1-059 NMRA." *Id.* ¶¶ 50-53. The Court of Appeals held that the award of zero damages to the estate was not supported by substantial evidence and remanded this case to the district court "for a new trial as to damages to the estate only." *Id.* ¶ 58. Judge Jonathan B. Sutin dissented on this issue, concluding that Plaintiffs waived the opportunity to challenge the award of zero dollars to the estate because their "litigation approach or failures" caused the alleged error in the verdict and they failed to raise their claim of error prior to the jury's discharge. *Id.* ¶ 74 (Sutin, J., concurring in part and dissenting in part).

**{17}** Ranack filed a petition for writ of certiorari, asking this Court to consider whether the Court of Appeals erred by granting Plaintiffs a new trial on damages to the estate after Plaintiffs brought about and failed to resolve an ambiguity in the verdict concerning the allocation of damages between individual loss-of-consortium claimants and the personal representative of the wrongful death estate. We granted certiorari under NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA, and we reverse the Court of Appeals on this issue.

## II.    DISCUSSION

**{18}** The sole issue on appeal is whether the district court abused its discretion by denying Plaintiffs' motion for a new trial. This issue requires us to determine whether Plaintiffs should be permitted to challenge the jury verdict on substantial evidence grounds or whether Plaintiffs waived the right to challenge the verdict.

### A.    Standard of Review

**{19}** The district "court has broad discretion in granting or denying a motion for new trial, and such an order will not be reversed absent clear and manifest abuse of that discretion." *Rhein v. ADT Auto., Inc.*, 1996-NMSC-066, ¶ 18, 122 N.M. 646, 930 P.2d 783 (internal quotation marks and citation omitted). Although we defer to the district court's ruling on a motion for a new trial, the district court does not have unrestricted authority to grant a new trial. *See id.* ¶¶ 18, 23. If a party seeks a new trial based on a claim of insufficient evidence, the district court may grant the motion only "when [the] jury's verdict is so against the weight of evidence that it would be a grave injustice to allow the verdict to stand." *Id.* ¶ 24.

**{20}** To evaluate whether the district court abused its discretion in this case, we must determine whether Plaintiffs waived their claim of error, which is a legal question that we review de novo. *See Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 20, 129 N.M. 677, 12 P.3d 431 ("When reviewing the decision of a district court, this Court must be deferential to findings of fact by the court, but we review conclusions of law de novo."). In considering whether the district court has abused its discretion, we consider the entire record and all of the circumstances surrounding the district court's decision. *See*

7

*Martinez v. Ponderosa Prods., Inc.*, 1988-NMCA-115, ¶¶ 4-5, 108 N.M. 385, 772 P.2d 1308.

**B.      Plaintiffs Waived Their Claim of Insufficient Evidence by Contributing to Ambiguity in the Verdict and Failing to Object to the Verdict or Seek Clarification of the Jury's Intent Prior to the Jury's Discharge**

**{21}**      Ranack argues that the district court properly denied Plaintiffs' motion for a new trial. Ranack asserts that Plaintiffs' litigation approach created ambiguity in the verdict with respect to the allocation of damages between Virginia Saenz's individual loss-of-consortium damages and the wrongful death damages she received as personal representative for the estate. Ranack contends that Plaintiffs waived their right to challenge the verdict on appeal because they failed to resolve the ambiguity before the jury was discharged. Finally, Ranack argues that by upholding the individual damages but remanding for a new trial on damages to the estate, the Court of Appeals set up a situation that likely will result in Plaintiffs receiving duplicate damages.

**{22}**      Plaintiffs, on the other hand, contend that the jury was adequately informed of the nature of the damages sought and the distinctions between the loss-of-consortium damages, which should have been awarded to the individual plaintiffs, and the wrongful death damages, which should have been awarded to the estate. Plaintiffs argue that the district court abused its discretion by denying their motion for a new trial, relying on *Jones v. Pollock*, 1963-NMSC-116, ¶ 12, 72 N.M. 315, 383 P.2d 271 ("[W]here it is shown . . . that the verdict of the jury on the question of damages is clearly not supported by substantial evidence adduced at the trial of the case, a motion for a new trial should be granted, and not to do so is an abuse of discretion by the court.").

**{23}**      As a general rule, "the right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal." *Thompson Drilling, Inc. v. Romig*, 1987-NMSC-039, ¶ 11, 105 N.M. 701, 736 P.2d 979. Our appellate courts have applied this waiver rule in situations where the jury verdict was indefinite, inconsistent, or ambiguous and the complaining party had an opportunity to challenge the verdict prior to the jury's discharge but failed to do so. *See id.* ¶¶ 5, 11 (applying the waiver rule to party's claim that the verdict was ambiguous and indefinite); *see also Helena Chem. Co. v. Uribe*, 2013-NMCA-017, ¶ 29, 293 P.3d 888 (declining to apply the waiver rule because the parties lacked "notice of and an opportunity to object to any perceived inconsistencies in the verdicts"); *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶ 36, 145 N.M. 797, 205 P.3d 844 (concluding that Allstate waived the right to challenge inconsistencies in the verdict because the verdict was "read aloud by the judge," the jury was "polled at Allstate's request," and Allstate failed "to bring the matter to the trial court's attention before the jury was discharged"), *rev'd in part on other grounds*, 2010-NMSC-047, 149 N.M. 74, 244 P.3d 342; *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 41, 128 N.M. 434, 993 P.2d 751 ("A litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged

8

inconsistency.").

**{24}** Where a party contributes to ambiguity in the verdict and fails to take steps to cure the ambiguity before the jury is discharged, it is appropriate to apply the waiver rule. For example, in *Ramos v. Rodriguez*, the Court of Appeals applied the waiver rule to reject a third-party plaintiff's argument that an inadequate special verdict form resulted in an inconsistent jury verdict. *See* 1994-NMCA-110, ¶ 13, 118 N.M. 534, 882 P.2d 1047. The district court read the jury verdict aloud in open court and polled the jurors at the third-party plaintiff's request to confirm their agreement. *Id.* ¶ 6. The district court then entered judgment denying the third-party plaintiff's claims. *Id.* ¶ 7. Six days later, the third-party plaintiff filed a motion for a new trial, arguing that there was an inconsistency in the verdict. *Id.* ¶ 6. The district court denied the motion. *Id.* On appeal, the third-party plaintiff complained that the district court caused inconsistency in the verdict by omitting necessary instructions from the special verdict form. *See id.* ¶¶ 9-10. The Court of Appeals held that the third-party plaintiff waived any objection to the verdict by failing to object to the perceived inadequacies in the verdict form before it was submitted to the jury and failing to request that the jury resolve the alleged inconsistency at the time the verdict was returned. *Id.* ¶¶ 12-13.

**{25}** The waiver rule similarly precluded a party's challenge to an ambiguous jury verdict in *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶¶ 36-40, 125 N.M. 748, 965 P.2d 332. The jury awarded the defendants "$128,500 for tortious interference with . . . contractual relations '*and/or*' $385,500 for violation of the Unfair Practices Act." *Id.* ¶ 1 (emphasis added). On appeal, the plaintiff argued that the "and/or" language on the verdict form rendered the jury's verdict ambiguous and resulted in the defendant receiving double recovery for a single injury. *Id.* ¶ 36. Although there appeared to be an error in the verdict form, the Court of Appeals declined to reverse the jury's award because the parties stipulated to the inclusion of the "and/or" language on the verdict form and the plaintiff failed to object to the verdict at trial. *Id.* ¶¶ 36-37.

**{26}** In this case, Plaintiffs acknowledged in the district court and the Court of Appeals that Instruction No. 17 may have been confusing, resulting in an unclear verdict. But in this Court, Plaintiffs advance only their claim of insufficient evidence, which they argue was properly raised by motion for a new trial. Plaintiffs argue that there is an important distinction between a defect on the face of the verdict, which can be corrected if brought to the district court's attention before the jury is discharged, and a substantive error indicating that the jury has disregarded the instructions and evidence, which may be raised in a motion for a new trial.

**{27}** Ranack agrees with Plaintiffs that New Mexico law does not require a party to challenge the sufficiency of the evidence underlying a damages award before the jury is discharged, and Ranack does not ask this Court to adopt such a rule. Ranack argues, however, that the waiver rule articulated in *Thompson Drilling* and subsequent cases should apply to Plaintiffs' claim of insufficient evidence in this case because Plaintiffs' actions and

9

inaction at trial culminated in an ambiguous jury verdict. We agree.

**{28}** First, Plaintiffs submitted a wrongful death damages instruction and a special verdict form that were likely to confuse the jury about how to allocate damages between the individual loss-of-consortium claimants and the wrongful death estate. Plaintiffs modified this Court's wrongful death damages instruction, UJI 13-1830, to provide that Virginia Saenz was bringing this case individually *and on behalf of the estate*. As a result, a reasonable jury could have interpreted Instruction No. 17 "to say that Virginia Saenz was entitled to one recovery encompassing both her individual and representative capacities." *Saenz*, 2015-NMCA-113, ¶ 78 (Sutin, J., concurring in part and dissenting in part). Compounding the potential for confusion, the special verdict form did not break out the elements of damages enumerated in Instruction No. 17, as suggested in the Use Note for UJI 13-1830, and neither Instruction No. 17 nor the special verdict form explained how the jury should allocate the enumerated elements of damages between the individual claimants and the estate.

**{29}** Second, when the jury asked a question during deliberations indicating that the jury was confused about the special verdict form, Plaintiffs failed to suggest a response that would assist the jury in allocating damages.

**{30}** And third, Plaintiffs had an opportunity to object to the verdict or to seek clarification of the jury's intent before the jury was discharged but failed to do so. As in *Ramos*, 1994-NMCA-110, ¶ 6, the district court read the ambiguous jury verdict aloud in open court and polled the jury at Plaintiffs' request. If Plaintiffs had raised their claim of error before the jury was excused, the district court could have clarified the jury's intent through further instruction and interrogatory. *See Diversey*, 1998-NMCA-112, ¶ 39 (explaining that a timely objection allows the district "court to send the jury back to the jury room to clarify its verdict, thereby correcting any error"). Additionally, a timely "objection would have developed the record (by adding argument of counsel, by sending the jury back to clarify the verdict, or by allowing the court to poll the jurors concerning the verdict), so that this Court could perform an informed review." *Id.*

**{31}** As the district court recognized at the post-trial motion hearing, the verdict was susceptible to more than one interpretation. One possibility is that the jury intentionally awarded zero damages for the value of the decedent's life and his future earning capacity. Another possibility is that the jury "concluded from the instructions, the special verdict form, and the lack of any explanation to the jury by Plaintiff, that its award of $482,000 properly included all of the compensation for 'Virginia Saenz, Individually *and* on behalf [of] the estate.'" *Saenz*, 2015-NMCA-113, ¶ 78 (Sutin, J., concurring in part and dissenting in part). This second possibility appears to be more consistent with the evidence of wrongful death damages at trial, including Virginia's testimony that Tony was in excellent health and could have earned $450,000 if he had worked at his current job until the age of seventy. But on appeal we can only speculate about what the jury intended.

**{32}**    We conclude that Plaintiffs waived their claim of error by contributing to ambiguity in the verdict and by failing to object or seek clarification of the jury's intent prior to the jury's discharge.  Because the jury verdict was ambiguous, the district court could not fairly evaluate whether the verdict was "so against the weight of evidence that it would be a grave injustice to allow the verdict to stand." *Rhein*, 1996-NMSC-066, ¶ 24.  We hold, based on all of the circumstances surrounding the district court's decision, that the district court did not abuse its discretion by denying Plaintiffs' motion for a new trial.

**C.    The Out-of-State Cases on Which the Court of Appeals Majority Relied Are Inapplicable to this Case**

**{33}**    The Court of Appeals majority relied on several opinions from other states to explain why it declined to apply the waiver rule to Plaintiffs' claim of insufficient evidence. *See Saenz*, 2015-NMCA-113, ¶¶ 51-53.  The out-of-state cases cited by the Court of Appeals are distinguishable from this case.  In each of those cases, the jury returned a complete, unambiguous verdict that included awards of zero damages for some claimants or elements despite evidence of damages at trial, and the plaintiff raised a substantive objection to the amount awarded.  None of the out-of-state cases involved a verdict that was susceptible to more than one reasonable interpretation due to ambiguity created and perpetuated by the plaintiff.

**{34}**    For example, in *State ex rel. Valley Radiology, Inc. v. Gaughan*, 640 S.E.2d 136, 137 (W. Va. 2006), the estate of a deceased patient brought a wrongful death action alleging that Valley Radiology failed to timely diagnose blood clotting, resulting in the patient's untimely death.  The jury, which had exhibited signs of bias during voir dire, awarded zero damages for sorrow, mental anguish, and lost income. *Id.* at 138-39.  Within two weeks after the verdict, the estate moved for a new trial on the ground that the verdict was inadequate. *Id.* at 139.  The trial court granted the motion, finding that the verdict was the result of juror prejudice and that it would not be "'practical to send the same jurors back to consider the issue of damages because there was almost no chance they could return a fair verdict.'" *Id.* at 139, 141.  Valley Radiology argued in the Supreme Court of Appeals of West Virginia that the estate waived the right to challenge the verdict by failing to object prior to the jury's discharge. *Id.* at 139-40.  The appellate court disagreed and declined to apply the waiver rule because "there was no confusion as to what the jury intended to award." *Id.* at 140.  The appellate court explained that

> the objective that underlies the general rule of requiring that an objection to the verdict form must be made prior to the jury's discharge is to provide the trial court with an opportunity to "cure" any alleged defect or irregularity in the form prepared by the jury.  No similar opportunity to cure is required for an inadequate award of damages.  This is because a request for a new trial based on the inadequacy of damages is not a procedural objection to the verdict form, but a substantive objection to the amount of damages awarded in view of the evidence presented and the findings of the jury as to fault.

11

*Id.* at 141 (footnote omitted).

**{35}**    In *Kava v. American Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002), the jury awarded damages to two beneficiaries of a wrongful death estate but awarded zero damages to the remaining three beneficiaries. After the jury had been dismissed, the estate moved for a new trial. *Id.* The trial court viewed the evidence in the light most favorable to the defendant and denied the estate's motion. *See id.* at 1176. The Alaska Supreme Court reversed, explaining that the trial court had applied the wrong standard and that "[o]n remand, the trial court should use its discretion and independently weigh the evidence to determine whether the verdict is against the weight of the evidence." *Id.* at 1177. The appellate court rejected the defendant's contention "that the estate waived any right to a new trial by failing to challenge the jury verdict as legally inconsistent before the jury was discharged." *Id.* The appellate court explained that the waiver rule does not preclude a party from moving "for a new trial on the discretionary ground that the verdict was against the weight of the evidence" or "from arguing the apparent inconsistency of the verdicts as a factor that the trial court could consider" when ruling on the motion. *Id.*

**{36}**    In *Clay v. Choctaw Nation Care Center, LLC*, 2009 OK CIV APP 35, ¶ 1, 210 P.3d 855, 856-57, the jury found a nursing home liable for a resident's death but awarded zero damages to the resident's estate. The estate filed a motion for a new trial on damages, which the district court granted. *Id.* ¶ 8. On appeal, the Court of Civil Appeals of Oklahoma held that the district court properly granted a new trial because the award of zero damages was inconsistent with uncontroverted evidence of damages at trial and was therefore inadequate as a matter of law. *Id.* ¶¶ 17-21. The appellate court rejected the nursing home's argument that the estate should have challenged the verdict before the jury was discharged. *Id.* ¶¶ 18, 20. The appellate court made a distinction between a challenge to a confusing, irregular, or incorrect verdict, which must be raised prior the jury's discharge, and a challenge to the substance of a verdict, which may be raised in a motion for a new trial. *Id.* ¶ 20.

**{37}**    Finally, in *Cooper v. Fultz*, 812 S.W.2d 497, 498 (Ky. 1991), *abrogated on other grounds by Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), the jury found the defendant partly liable for injuring the plaintiff in a vehicle collision but awarded zero damages for pain and suffering. The trial court denied the plaintiff's motion for a new trial on the ground that the plaintiff had failed to object when the verdict was returned. *Id.* On appeal, the Supreme Court of Kentucky held that the waiver rule does not apply to a complete verdict that specifies the jury's "deliberate intention to make no award for one (or more) elements of damages." *Id.* at 499. The appellate court explained that if a jury "has flatly decided that the claimant's pain and suffering is worth nothing," it would be a "'booby trap'" to ask the jury to reconsider and to replace the zero with a dollar amount. *Id.* at 499-500. The appellate court concluded that if a hostile jury deliberately awards zero damages, the verdict "should be subject to a motion for a new trial which should be granted unless there is countervailing evidence such that the jury's verdict, taken as a whole, withstands the test of inadequacy." *Id.* at 500.

**{38}**  These out-of-state cases stand for the proposition that if the jury returns a complete, unambiguous verdict, a party may raise a substantive objection to the size of the damages award in a motion for a new trial.  *See Kava*, 48 P.3d at 1177; *Cooper*, 812 S.W.2d at 500-01; *Clay*, 2009 OK CIV APP 35, ¶ 20; *Valley Radiology*, 640 S.E.2d at 141.  As the courts recognized in *Valley Radiology*, 640 S.E.2d at 140-41, and *Cooper*, 812 S.W.2d at 499-500, if the verdict clearly reflects the jury's deliberate intention to award zero damages despite evidence to the contrary, it does not advance judicial economy or fundamental fairness to ask the jury to correct the verdict.  But when the jury verdict is confusing, ambiguous, or incomplete, the parties have an obligation to timely object so that the trial court can take steps to cure any errors in the verdict and clarify the jury's intent before the jury is discharged.  *See Valley Radiology*, 640 S.E.2d at 141.

**{39}**  In this case, the verdict was ambiguous.  It is unclear whether the jury's award of zero damages to the estate accurately reflected the jury's intent or whether the jury mistakenly awarded wrongful death damages to the individual claimants.  It is appropriate to apply the waiver rule to Plaintiffs' claim of insufficient evidence because Plaintiffs contributed to ambiguity in the verdict and failed to object or seek clarification of the jury's intent prior to the jury's discharge.

**D.      The Appeal Before This Court Does Not Present a Claim of Jury Instruction Error**

**{40}**  To avoid any implication to the contrary, we emphasize that neither party raises a claim of jury instruction error before this Court.  Plaintiffs do not challenge the Court of Appeals conclusion that Plaintiffs were not prejudiced by the erroneous inclusion of inconsistent loss-of-consortium provisions in Instruction No. 17.  The unchallenged jury instructions are therefore the law of the case.  *See Haaland v. Baltzley*, 1990-NMSC-086, ¶ 14, 110 N.M. 585, 798 P.2d 186.

**{41}**  Although the appeal before this Court does not present a claim of jury instruction error, it appears that the jury instructions and special verdict form in this case contributed to juror confusion.  We request that the Uniform Jury Instructions-Civil Committee consider whether amendments to the current version of UJI 13-1830 are warranted to ensure that jurors understand how to allocate damages between the personal representative for the wrongful death estate and the individual claimants, if any.  We also ask the Committee to consider whether a new special verdict form should be adopted for use in wrongful death cases.

**III.      CONCLUSION**

**{42}**  We reverse the Court of Appeals' holding that Plaintiffs are entitled to a new trial on the issue of damages to the estate.  We affirm the district court's denial of Plaintiffs' motion for a new trial, and we affirm the district court judgment.

13

**{43}   IT IS SO ORDERED.**

_____
                         **PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL,  Justice**